IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>JIMMY L. POWERS,<br><br>     Defendant. | 4:13-CR-3048<br><br>TENTATIVE FINDINGS |

  The Court has received the presentence investigation report (PSR) in this case. Powers has pleaded guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344. Powers acknowledges that he owes the victim of the fraud, Town and Country Bank, some amount of restitution. But Powers has objected to the amount recommended in the PSR and sought by the government. Filing 20. Powers has also filed a motion for variance. Filing 21.

  IT IS ORDERED:

1. The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005), and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

 (a) give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

 (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

 (c) impose upon the United States the burden of proof on all Guidelines enhancements;

 (d) impose upon the defendant the burden of proof on all Guidelines mitigators;

    (e)    depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

    (f)    in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2.    The Court will address Powers' motion for variance (filing 21) at sentencing. Powers' objections (filing 20) require further discussion.

    Powers operates a hay business in Gibbon, Nebraska. PSR ¶ 17. Beginning in 2003, the Bank extended loans to Powers for various purposes, including the purchase of farm equipment and to cover operational expenses. PSR ¶ 19. Powers, in turn, signed security agreements pledging as collateral various farm assets, including hay and hay products, and granting the Bank a first security interest in this collateral. PSR ¶ 18. Under the agreements, Powers was required to deposit proceeds from hay sales in the Bank in order to pay down the loan balances. PSR ¶ 18.

    However, between approximately November 2006 and December 2007, Powers diverted proceeds from the sale of hay and other monies that were supposed to be deposited with the Bank. PSR ¶ 21. In total, he failed to pay over approximately $264,023.03 in hay proceeds. PSR ¶ 22. Powers accomplished this by depositing the monies in new accounts in two other banks. PSR ¶ 22. The majority of these specific proceeds are unaccounted for and have not been recovered. From December 2007 to January 2008, however, Powers paid the Bank $25,755.86 of the diverted proceeds. Filing 19-4 at 2.

    Powers has stated that in 2007, he invested in equipment to produce dairy-quality hay. PSR ¶ 32. Due to bad weather, his hay was of inferior quality, and he was forced to sell it for half the price of dairy-quality hay, causing him a serious financial loss. PSR ¶ 32. In his brief, Powers claims that he began diverting hay proceeds in order to keep his business afloat, and he used the money to pay the landowners from whom he was renting, as well as operating and living expenses. Filing 23 at 4–5.

In late November 2007, Powers filed for bankruptcy. PSR ¶ 25. Then in August 2008, the Bank obtained an order from the United States Bankruptcy Court for the District of Nebraska authorizing the Bank to repossess hay, equipment, and other assets Powers had previously pledged. PSR ¶ 27. The Bank applied the proceeds from the sales of these assets to Powers' outstanding debt. PSR ¶ 27. The results of the Banks' recoupment efforts will be discussed below.

The parties agree that, for purposes of the Guidelines' loss calculation, the Bank suffered a loss of $264,023.03. Filing 7 at 3–4. Nor does Powers dispute that this amount was improperly diverted. Filing 23 at 4. And under the parties' plea agreement, Powers "acknowledges restitution in the amount of $264,023.03 less any amount paid prior to sentencing, payable to Town and Country Bank will be ordered as a part of the sentence in this case, and [Powers] agrees the Court may order restitution." Filing 7 at 4. However, the parties dispute the proper method for calculating this restitution.

The government (and the Probation Office) assert that Powers owes $81,595.34 in restitution. They obtained this figure by starting with $329,498.96, the unpaid principal balance on the loan as of August 25, 2008 (just prior to the Bankruptcy Court order that allowed the Bank to repossess collateral). From this amount they have subtracted $247,903.62, which is the amount recovered by the Bank through its sale of other collateral, minus some of the collection costs incurred by the Bank. That left an unpaid principal amount of $81,595.34. PSR ¶¶ 27, 33, 36, 88 & pp. 17–18; filing 19-1 at 1; filing 19-2 at 14–15. The government is not seeking any accrued interest on the loans or the remaining unpaid collection costs of the Bank.[1] Filing 18 at 3.

Powers proposes that the correct method for calculating restitution is the difference between the amount recovered and the amount diverted—$264,023.03 minus $247,903.62—which would result in restitution of $16,119.41. Powers argues that the Bank and government are attempting to "transform the entire amount loaned to Powers into a criminal loss for purposes of computing restitution." Filing 23 at 4. He contends that, due to his financial difficulties, the Bank would have

---

[1] James Friesen, an executive vice president of the Bank, stated that the Bank incurred losses in unpaid interest on the loans, in the amount of $141,706.48 as of August 2013, and $43,710.20 in unpaid collection costs (which includes unspecified attorney fees). Filing 19-1 at 1; filing 19-4 at 3; Victim Impact Statement at 3.

- 3 -

been unable to recoup its entire principal, regardless of his diversion of the hay proceeds.

The Court tentatively finds that the government's calculation is correct, and that Powers owes the Bank $81,595.34 in restitution. Restitution in this case is governed by the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663 *et seq*. The MVRA requires defendants convicted of a crime committed by fraud or deceit (such as 18 U.S.C. § 1344), to make restitution to the victims of the offense in the full amount of each victim's loss. §§ 3663A(c)(1)(A)(ii) and 3664(f)(1)(A). The government has the burden to demonstrate the amount of such loss by a preponderance of the evidence. § 3664(e). The MVRA defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense . . . including, in the case of an offense that involves as an element a scheme, . . . any person directly harmed by the defendant's criminal conduct in the course of the scheme." § 3663A(a)(2).

Unlike the loss calculations under the Guidelines, which assess the defendant's culpability and are punitive in nature, restitution focuses on harm to the victim. *United States v. Gossi*, 608 F.3d 574, 581 (9th Cir. 2010). The purpose of restitution is to put the victim back in the position he or she would have been but for the defendant's criminal conduct. *Id*. So, the amount of restitution cannot exceed the actual, provable loss realized by the victims. *United States v. Martinez*, 690 F.3d 1083, 1088 (8th Cir. 2012). The causal connection between the defendant's acts and the victim's losses must not be unreasonably extended. *United States v. Spencer*, 700 F.3d 317, 323 (8th Cir. 2012).

The MVRA seeks to assure that victims of a crime receive full restitution. *Dolan v. United States,* 130 S. Ct. 2533, 2539 (2010). Here, that means putting the Bank back in the position it would have been in had Powers not diverted $264,023.03 in hay proceeds. The government's calculation does just that. By selling other collateral, the Bank was able to recoup some—$247,903.62—but not all, of the $329,498.96 unpaid principal on Powers' loans. If Powers had not sold the hay, or had paid the Bank the proceeds, the Bank would have had more than enough to cover the outstanding principal balance. In short, due to Powers' fraud, the Bank has been left with less money than it would have had otherwise, and it is entitled to restitution of the difference.

- 4 -

Powers has raised two additional questions regarding the government's figures. The first merits further consideration, the second does not. First, Powers notes that it is not clear if the government's calculation has given Powers credit for the $25,755.86 of the diverted proceeds that were recovered. The Court is also unable to determine if this amount was included in the Bank's calculations. That will not do. The MVRA does not permit victims to obtain double recovery or a windfall through restitution. *United States v. Louper-Morris*, 672 F.3d 539, 566 (8th Cir. 2012). Of course, it may be that even if this amount was not included, the Bank is still actually short $81,595.34, in which case the Bank is still entitled to the full amount of restitution requested. Powers diverted far more than $25,000, and the remaining $239,000-some in proceeds could have paid off the remaining principal. At sentencing, the government should be prepared to explain whether and how the $25,755.86 in returned proceeds were factored into its calculation. Otherwise, the Court may need to reduce the restitution award accordingly.

Powers has also objected to "several questionable expenses" that the Bank incurred in selling collateral. Filing 23 at 4. His brief does not provide any further details, but in his initial objections to the PSR, Powers pointed to $34,609.10 that the Bank claimed as costs of trucking and selling the hay. PSR at p. 17. According to Powers, the Bank has failed to produce documentation to support these costs and the amounts are "preposterous." PSR at p.17. As previously noted, the government's restitution calculation subtracted the Bank's collection costs from the gross proceeds of the sale of collateral before crediting the net proceeds against Powers' remaining debt. Powers is essentially arguing that because some of those collection costs were unreasonable, he received less credit against the principal than he should have.

On the evidence presently available, the Court tentatively finds this objection to be without merit. The MVRA does not require the Court to offset losses by amounts that could have been avoided through proper mitigation. *United States v. Grissom*, 44 F.3d 1507, 1515 (10th Cir. 1995); *United States v. Soderling*, 970 F.2d 529, 534 & n.10 (9th Cir. 1992).[2] However, Powers is entitled to present evidence bearing on the

---

[2] Both *Grissom* and *Soderling* addressed restitution under the Victim and Witness Protection Act of 1982 (VWPA), now codified as amended at 18 U.S.C. § 3663. But the

reasonability of the Bank's collection efforts, and the government will be permitted to offer any rebuttal evidence. While the MVRA does not *require* the Court to offset losses that could have been avoided by proper mitigation, neither does the MVRA explicitly forbid the Court from doing so. *Soderling,* 970 F.3d at 534 n.10. That said, Powers has not yet presented any such evidence, and his vague objection gives the Court no reason to doubt the accuracy of the government's calculation or the reasonability of the Bank's collection efforts.

Thus, the Court's tentative finding is that the restitution figure proposed in the PSR and requested by the government, $81,595.34, is correct, subject to the qualifications stated above and any developments that arise at the sentencing hearing.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 10th day of October, 2013.

---

relevant portions of the MVRA and VWPA are substantively identical, so the Court may look to VWPA caselaw for guidance. *United States v. Chalupnik,* 514 F.3d 748, 752–53 & n.2 (8th Cir. 2008).

- 6 -

- 7 -

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
United States District Judge